# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| SYREETA MUWWAKKIL, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **CASE NO. CV 03-B-1132-S** |
| | } | |
| ALABAMA DEPARTMENT OF | } | |
| YOUTH SERVICES; JERRELL | } | |
| BARBEE; JAMES CALDWELL; | } | |
| JOHN ZEIGLER, | } | |
| | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This case is before the court on the Motions for Summary Judgment of defendants

Jerrell Barbee, (doc. 109), Alabama Department of Youth Services, (doc. 111), and James

Caldwell, (doc. 121).

## BACKGROUND

Plaintiff is a young woman who was involuntarily committed the custody of the

Alabama Department of Youth Services ("DYS") at the age of fifteen. (Second Amended

Complaint, Doc. 61, pp. 1-2, ¶¶ 2, 10-11.)  While she was in DYS custody, plaintiff

resided at the residential juvenile detention center and training school known as the

Alabama Training School for Girls, Chalkville Campus (hereinafter, "Chalkville

Campus"). (*Id*.)  This action arises from plaintiffs allegations that she was sexually

harassed and abused by DYS employees while she was incarcerated at the Chalkville

Campus.  Plaintiff has asserted Title IX claims against DYS and constitutional claims

under 42 U.S.C. § 1983 against DYS employees who allegedly committed the abuse, as

well as against DYS supervisors.  In addition, plaintiff has asserted state law claims for

negligent, wanton, and/or malicious hiring, training, and/or supervision against DYS

supervisors.

## MOTION TO STRIKE

Jerrell Barbee moves the court to strike portions of the plaintiff's evidence

pursuant to Federal Rule of Civil Procedure 12(f) on the ground that certain of plaintiff's

exhibits are immaterial, irrelevant, and impertinent to the issues before this court as they

pertain to defendant Barbee.  (Barbee's Motion to Strike, Doc. 133, at 1.)  The court is of

the opinion that Barbee's Motion to Strike is due to be denied.

Barbee moves the court to strike Exhibits 14, 18, 29, 32, 33-39, 44, and 46-52

from plaintiff's evidence as irrelevant and immaterial as to plaintiff's claims against him.[1]

(Barbee's Motion to Strike, at 2-3.)  Barbee became principal of the Sequoyah School in

July 1997.  (Pl.'s Evidence in Opposition to DYS's and Barbee's Motions for Summary

Judgment, Doc. 146, Ex. 7, Barbee Depo. I, at 10.)  Plaintiff's Exhibits 14, 29, 32, 33-39,

44, and 46-51 of Plaintiff's Evidentiary Submission are all dated before July 1997.

---

[1]  Plaintiff submitted collective evidence in opposition to the separate Motions for
Summary Judgment by defendants DYS and Jerrell Barbee.  (Plaintiff's Evidence Submitted in
Opposition to Department of Youth Services and Jerrell Barbee's Motions for Summary
Judgment, Docs. 146-147.)  Defendant Barbee acknowledges that most of the exhibits listed
directly relate to plaintiff's claims against DYS and only moves to strike the listed exhibits to the
extent that they may be considered in opposition to his Motion for Summary Judgment.

Therefore, those Exhibits are not relevant to plaintiff's claims against Barbee.  However, as the court has not considered these Exhibits in deciding Barbee's Motion for Summary Judgment, the Motion to Strike will be denied as moot as to Exhibits 14, 29, 32, 33-39, 44, and 46-51.

Plaintiff's Exhibit 18 consists of documents relating to allegations against Mr. Lewis in September 1997, which Barbee was responsible for investigating.  (*See*, Pl.'s Evidence in Opposition to DYS's and Barbee's Motions for Summary Judgment, Doc. 146, Ex. 18, BYRD RFP 3931, BYRD RFP 3932.)  The court finds that Exhibit 18 is relevant to plaintiff's claims against Barbee.  Therefore, as to Exhibit 18 of plaintiff's evidence, Barbee's Motion is denied.

Plaintiff's Exhibit 52 is a memorandum from James V. Kent, Chief of Security, to G. Wayne Booker dated July 20, 1998, regarding Kent's investigation into allegations of sexual misconduct in the cottages.  (Pl.'s Evidence in Opposition to DYS's and Barbee's Motions for Summary Judgment, Doc. 147, Ex. 52.)  None of the allegations discussed in the memo are against employees under Barbee's supervision, and none of the alleged incidents occurred on school grounds.  (*Id*.)  Therefore, Exhibit 52 is irrelevant to plaintiff's claims against Barbee.  Because the court has not considered Exhibit 52 at summary judgment as against Barbee, the Motion to Strike will be denied as moot with respect to that Exhibit.

Barbee also moves the court to strike Plaintiff's Exhibit 21, a declaration by the

plaintiff, primarily on the grounds that it is unauthenticated, unsworn, and therefore, not admissible.  (Barbee's Motion to Strike, at 4-5, ¶ 4.)  Generally, documents must be properly authenticated in order for them to be considered on summary judgment.  See Fed.R.Civ.P. 56(e).  "The nonmoving party, however, need not produce evidence *in a form* that would be admissible at trial to avoid summary judgment; instead its evidence must be reducible to admissible evidence."  *U.S. v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in the State of Alabama*, 941 F.2d 1428, 1444 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)) (internal quotation marks omitted; emphasis in original.)  At trial, plaintiff would be able to testify as to the statements in her declaration.  Therefore, because the evidence in Plaintiff's Exhibit 21 is reduceable to admissible evidence at trial, Barbee's Motion to Strike will be denied as to Exhibit 21.

Finally, plaintiff moves the court to strike Exhibit 13, a collection of documents which purport to be DYS and Chalkville Campus organizational charts, lists of employees, and other various organizational documents.  (Barbee's Motion to Strike, at 4, ¶ 3.) ;Pl.'s Evidence in Opposition to DYS's and Barbee's Motions for Summary Judgment, Doc. 146, Ex. 13.)  The court has not relied on Exhibit 13 in its consideration of Barbee's Motion for Summary Judgment.  Therefore, as to Exhibit 13, Barbee's Motion to Strike will be denied as moot.

## MOTIONS FOR SUMMARY JUDGMENT

4

I.    **FACTUAL SUMMARY**[2]

Plaintiff arrived at the Chalkville Campus in June 1998. (Second Amended Compl., Doc. 61, at 1, ¶ 2.)  She alleges that various members of the DYS staff began to sexually abuse and harass her soon after her arrival.

When plaintiff first arrived at the Chalkville Campus, she lived in Chickasaw Cottage where Terrance Acey worked as a youth services aide.  Plaintiff alleges that, he began to sexually abuse and harass her around August 1998.  (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex. 1, Muwwakkil Depo., at 164-165.)  She claims that he would "come in there and bother [her] every morning" when he was supposed to be waking up the girls.  (*Id.*, at 165.)  Plaintiff testified that, many times, Acey woke her up by pulling down her underwear and pulling the covers off of her.  (*Id.*, at 165-166.)  Plaintiff claims that Acey also regularly harassed her while she was getting dressed.  (*Id.*, at 166-167.)  She testified:

> A:    Sometimes I would already be awake before he come wake us up – or and I would be getting dressed or in the middle of changing my clothes and he'd come in there and just tell me he wanted to see me naked, or if I was standing there already in my underwear . . . he would just tell me to go ahead and take off my underwear or he would try to pull them down so he could see me naked

_____

[2]  As required when determining a Motion for Summary Judgment, the Statement of Facts reflects the facts in the light most favorable to Muwwakkil, the non-moving party.  All disputed facts are resolved in her favor and all reasonable inferences arising from those facts are drawn in her favor. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 3188-89, 111 L. Ed. 2d 695 (1990); *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455 (11th Cir. 1997).

and –

Q:     How did you respond to him when he did this?

A:     I would cover myself up and tell him to get out of my room.

Q:     Was there ever an instance where he actually had his hands on your underwear?

A:     Yes.

Q:     What would you do when he actually had his hands your underwear?

A:     I would push him off of me and I'd try to push him away from me.

(*Id.*, at 167-68.)

Plaintiff alleges that, at least twice in her bedroom and once in the kitchen, Acey pinned her down and pushed his fingers into her vagina.  (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex. 1, Muwwakkil Depo., at 169-180.)  During some of these incidents, and on several separate occasions, plaintiff claims that Acey also grabbed her hand and put it down his pants onto his penis.  (*Id*., at 180-81) Plaintiff testified that all of these alleged incidents occurred in the early morning, (*Id.*, at 184), and that most of them occurred in her bedroom in Chickasaw Cottage.  (*Id*., at 177, 181.)

Plaintiff claims that she pleaded with Acey to leave her alone, but that he threatened that if she did not grab his penis or let him touch her vagina, he would take away her privileges, throw away her mail, make sure she didn't get any passes, and report her as a suicide risk so that they would take away her clothes and her mattress. ((Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex. 1, Muwwakkil Depo., at 168-69) In late August 1998, plaintiff told a Chickasaw Cottage staffer about Acey's

6

behavior.  (*Id*. at 185.)  Shortly thereafter, James Caldwell, Superintendent of the Chalkville Campus, held a meeting with plaintiff and several other girls who had also reported sexual harassment and/or abuse by Chickasaw Cottage staff.   (Plaintiff's Evidence Submitted in Opposition to DYS's and Jerrell Barbee's Motions for Summary Judgment, Ex. 1, Muwwakkil Depo., at 185-86.)  Plaintiff testified that Caldwell asked her to tell him what happened, which she did.  (*Id*.)  According to plaintiff, Caldwell's response was to call Acey on the speaker phone, in the girls' presence, to ask him about the girls' allegations.  (*Id*., at 186.)  Plaintiff testified that Acey denied the allegations and that then, when Caldwell informed Acey that plaintiff was in the room listening, Acey began to talk directly to her.  (*Id*., at 187.)  Plaintiff claims that Acey told her she was lying, and that the discussion eventually escalated into a verbal altercation, to the extent that each was cursing at the other.  (*Id*., at 187-88.)   Ultimately, Caldwell told the girls that he did not believe them, and sent them back to their cottage.  (*Id*., at 188.)

Plaintiff testified that, after the meeting with Caldwell, Acey continued to sexually harass her, though "it wasn't as bad as before."  (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex. 1, Muwwakkil Depo., at 189.)  Plaintiff claims that Acey would still make sexually explicit comments like, "I want to fuck you in the ass and I want you to suck my dick," and that he would brush up against her unnecessarily.  (*Id*.)

Plaintiff wrote several letters to her mother in which she told her about the abuse

7

and, in October 1998, plaintiff's mother went to the Chalkville Campus and spoke with Caldwell about the sexual abuse her daughter was experiencing. (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex. 1, Muwwakkil Depo., at 189-90.) After her mother's visit, the first action was taken as a result of plaintiff's allegations; she was transferred to Cherokee Cottage. (*Id*., at 191.)

Plaintiff alleges that, after she moved to Cherokee Cottage in the fall of 1998, a campus security guard named John Zeigler began to sexually abuse and harass her. (Plaintiff's Evidence Submitted in Opposition to DYS's and Jerrell Barbee's Motions for Summary Judgment, Ex.1, Muwwakkil Depo., at 192-93, 196.) Plaintiff claims that Zeigler "used to joke on [her] butt all the time" and that he "slapped [her] on the butt several times." (*Id*., at 197.) Also, plaintiff alleges that Zeigler grabbed her pelvic area several times, often while making comments such as "I know its wet down there." (*Id*.) Other times, according to plaintiff, Zeigler would grab her around the waist and grind his crotch into her while telling her that he was hard and that he wanted her to give him oral sex. (*Id.*, at 200.) Plaintiff also alleges that, several times, Zeigler grabbed her hand, put it down his pants and told her to touch him to make him feel good. (*Id*., at 202.) In addition, plaintiff claims that Zeigler repeatedly threatened to tell the School Principal, Jerrell Barbee, that plaintiff was stealing if she did not masturbate him. (*Id*., at 204.)

While Acey harassed plaintiff only in the cottage environment, plaintiff was

usually at school or on her way to or from school when Zeigler harassed her.  (*Id.*, at 198.)

Plaintiff had special privileges at school, by which she was allowed to stay after school to

help clean, buff floors, plant flowers, and assist with other maintenance tasks.  (*Id.*, at

198.)  Plaintiff testified that she tried to stay out of Zeigler's way but that, she stayed after

school a good bit and that, often, Zeigler was the only other person around.  (*Id.*, at 206.)

Many of the alleged incidents of sexual harassment by Zeigler occurred while plaintiff

was in or around the school building doing her special chores, often after school hours.

(*Id.*, at 198, 202-05.)  Plaintiff even testified that there were times when Zeigler would

pull her out of class for various reasons and then sexually harass her.  (*Id.*, 207.)

Plaintiff eventually informed Christine Bennett, a teacher, and Stephanie Rosenal,

a staff member, about Zeigler's actions.  (Plaintiff's Evidence Submitted in Opposition to

The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment,

Doc. 146, Ex. 1, Muwwakkil Depo., at 210-11.)  Shortly thereafter, in January 1999,

Jerrell Barbee, called plaintiff into his office to discuss her allegations against Zeigler.

(*Id.*, 211-12.)  Plaintiff testified that she told Barbee, in detail, the things that Zeigler had

been doing to her, (*Id.*, at 282), but that Barbee took Zeigler's side, made it evident that

he didn't believe her allegations,  yelled at her, and generally made her feel bad for

reporting Zeigler's actions.  (*Id.*, at 212-13.)  Thereafter, although Barbee never explicitly

told plaintiff that her privileges would be revoked, plaintiff claims that she was no longer

allowed to stay after school to do special chores.  (*Id.*, at 284-285.)  Nevertheless,

9

according to plaintiff, Ziegler's behavior did not change after she complained to Barbee. (*Id.*, at 290-91.)  She claims that he continued to make sexually explicit comments and to touch her in an inappropriate manner.  (*Id.*, at 291.)  Plaintiff did not report Zeigler to Barbee again.  (*Id.*, at 290.)  She was released from DYS custody on May 17, 1999. (Second Amended Compl., Doc. 61, at 1, ¶ 2.)

## II.    MOTION FOR SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23.

Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show either by affidavits, depositions, or discovery responses on file that there exist "specific facts showing that there is a genuine issue for trial," *Celotex*, 477 U.S. at 324.  The nonmoving party need not present evidence in a form necessary for admission at trial, however he may not merely rest on his pleadings. *Id.*  "[I]t is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark*, 929 F.2d at 608.  After a properly made motion has been presented and the court has allowed appropriate responses to be submitted, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).

## II.    SECTION 1983 CLAIMS

In her Second Amended Complaint, plaintiff has asserted constitutional claims under 42 U.S.C. § 1983 against Chalkville Campus Superintendent James Caldwell, and Chalkville Campus school principal Jerrell Barbee.[3]  Caldwell and Barbee have moved separately for summary judgment on plaintiff's Section 1983 claims against them.  (*See,*

---

[3] Plaintiff's claims under 42 U.S.C. § 1983 against John Zeigler remain as well. However, because he did not file a motion for summary judgment, plaintiff's claims against Zeigler will not be discussed here.

11

Docs. 109, 121.)[4]

Caldwell and Barbee have both raised the defense of qualified immunity. The doctrine of qualified immunity insulates government officials from personal liability for money damages for actions taken pursuant to their discretionary authority insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

To receive qualified immunity, a defendant must first prove that he was acting within his discretionary authority. *Cottone v. Jenne*, 326 F.3d 1352, 1358-59 (11th Cir. 2003). If the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Id.* The Supreme Court has established a two-part test to determine applicability of qualified immunity. *Hope v. Pelzer*, 536 U.S. 730 (2002). The court must first determine whether plaintiff has established a constitutional violation; that defendants acted with deliberate indifference to her Eighth and Fourteenth Amendment rights. *Id.* If the plaintiff has established that the defendant has violated a constitutional right, the next sequential step is to determine whether the right was clearly established.

---

[4] Defendant James Caldwell's Motion for Summary Judgment, (doc. 115), and Memorandum in Support, (doc. 116), were re-filed, by leave of the court, (*See*, doc. 120), and were thus superceded by his second Motion for Summary Judgment, (doc. 121), and Memorandum in Support. (Doc. 122.) Pursuant to court order, (*see*, doc. 140), Caldwell filed an additional Memorandum in Support of Summary Judgment, (doc. 144), which supercedes his prior Memorandum in Support, (doc. 122.), which the court ordered be struck and disregarded. Therefore, the court will consider Defendant James Caldwell's Motion For Summary Judgment, (doc. 121), and the Memorandum in Support of His Motion, (doc. 144.)

*Saucier v. Katz*, 533, U.S. 194, 201 (2001).

### A.    Discretionary Authority

For the purposes of federal qualified immunity analysis, a defendant acts within his discretionary authority when his actions (1) "were undertaken pursuant to the performance of his duties," and (2) were "within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988).

### 1.    *Jerrell Barbee*

As Principal of the Sequoia School, Barbee was under the direction of the Superintendent of the DYS School District, Dr. John Stewart, who, in turn, reported directly to the DYS School Board, the policy-forming body of the school district. (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex. 19, DYS School District Policy No. 3.4.)  As principal, Barbee's responsibilities included providing a safe, orderly environment that facilitates teaching and learning.  (*Id.*, Ex. 15, Role Description - Principal.)  Barbee was also responsible for interpreting and enforcing federal and state laws, and state and local board policies.  (*Id.*)  Alabama DYS School District Policy Number 10.762 states that the Board "directs all school personnel to discharge, in a reasonably prudent manner, all responsibilities relative to the ***care, safety, and welfare*** of pupils under their jurisdiction."  (*Id.*, Ex. 25.)  Barbee testified that he was aware that, pursuant to school and DYS policy, he was under an obligation to report any suspected

sexual abuse first to his supervisor, the School District Superintendent, then in writing to the Chalkville Campus Superintendent, James Caldwell.  (Barbee Depo. 4-19-05, Plaintiff's Evidence in Opposition to Barbee's and Caldwell's Motions for Summary Judgment, Doc. 134, Ex. 8, at 20-21.)

Plaintiff contends that, because Barbee was obligated to report sexual abuse allegations under DYS policy, as well as State law, his failure to do so was a ministerial act not taken under his discretionary authority.  The Eleventh Circuit has held, however, that whether a government official acts within his discretionary authority turns not on the ministerial versus discretionary nature of an act, but rather on an evaluation of the official's duties and authority.  *Jordan v. Doe*, 38 F.3d 1559, 1565-66 (11th Cir. 1994). Discretionary *authority* does not require the performance of a discretionary *act*; even a ministerial act is within the defendant's discretionary authority if the *Rich v. Dollar* test is satisfied.  *Jordan v. Doe*, 38 F.3d 1559, 1565-66 (11th Cir. 1994).  In *Jordan*, the Eleventh Circuit warned that "'it would be unwise to engage in a case by case determination of Section 1983 immunity based upon the ministerial versus discretionary nature of the particular official act challenged.'" *Id*.  (quoting *Coleman v. Franz*, 754 F.2d 719, 727 (7th Cir. 1985).

As Barbee himself argues, his actions which are the subject of this lawsuit were undertaken pursuant to the performance of his duty to report allegations of sexual abuse, and were within the scope of his authority to do so.  The *Rich v. Dollar* test is therefore

14

satisfied,  841 F.2d at 1564, and court finds that Barbee was acting within his

discretionary authority for the purposes of the qualified immunity analysis.

>    **2.**    ***James Caldwell***

As the Superintendent of the Chalkville Campus from 1990 through 2001, James

Caldwell was generally responsible for supervising, directing, and monitoring the day to

day activities of subordinate employees, the implementation of safety and security

procedures, the interviewing and recommending for hire of job applicants, all in

accordance with Chalkville Campus, DYS, state and federal policies and procedures, and

his personal judgment.  (Plaintiff's Evidence Submitted in Opposition to The Department

of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex.12,

Youth Services Institution Superintendent II, Task Statements.)  Caldwell was also

responsible for recommending personnel, legal and other actions.  (*Id*.)  Caldwell testified

that, as Superintendent, he was ultimately responsible for the overall operation and

management of staff and students, that he was obligated to ensure the safety of the

students, to make sure they were not being abused in any way, and that it his duty to

investigate all allegations against the staff of which he was made aware.  (Plaintiff's

Evidence Submitted in Opposition to Barbee's and Caldwell's Motions for Summary

Judgment, Doc. 134, Ex. 4, Booker Depo., at 281, 332-34, 366-68, 426; *See also*, Doc.

146, Ex. 15; Doc. 147, Ex. 50.)  Caldwell was at the top of the chain of command at the

Chalkville Campus; he reported to the Administrator of Institutional Services, G. Wayne

Booker, who, in turn, reported to the Director of the Department of Youth Services.

(Plaintiff's Evidence Submitted in Opposition to Barbee's and Caldwell's Motions for

Summary Judgment, Doc. 134, Ex. 4, Booker Depo, at 112.)

Caldwell's actions which are the subject of this lawsuit were undertaken pursuant

to the performance of his duties, and within the scope of his authority.  Therefore, under

*Rich v. Dollar*, he was acting within his discretionary authority.

### B.      Constitutional Violation

The court must now determine whether plaintiff has established a constitutional

violation committed by defendants Caldwell and Barbee.  Under the Eighth and

Fourteenth Amendments, plaintiff had a clearly established right to physical safety and

bodily integrity while she was involuntarily committed to the custody of DYS and

confined at the Chalkville Campus.  *See, Taylor v. Ledbetter*, 818 F.2d 791, 794 (11th

Cir. 1987), *cert. denied*, 489 U.S. 1065 (1989) (state assumed obligation of providing safe

environment for child involuntarily placed in foster care and abuse of child by foster

mother constituted deprivation of liberty interest under Fourteenth Amendment);

*Youngberg v. Romeo*, 457 U.S. 307 (1982) (involuntarily committed mentally retarded

individual has Fourteenth Amendment right to safe conditions of confinement).  In

*DeShaney v. Winnebago City Dept. of Social Services*, 489 U.S. 189 (1989), the United

State Supreme Court explained this right:

> It is true that in certain limited circumstances the Constitution imposes upon
> the State affirmative duties of care and protection with respect to particular

16

individuals.  In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), we recognized that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the States through the Fourteenth Amendment's Due Process Clause, requires the State to provide adequate medical care to incarcerated prisoners.  We reasoned that because the prisoner is unable " 'by reason of the deprivation of his liberty [to] care for himself,' " it is only " 'just' " that the State be required to care for him.

  In *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), we extended this analysis beyond the Eighth Amendment setting, holding that the substantive component of the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their "reasonable safety" from themselves and others.  As we explained: "If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed -who may not be punished at all - in unsafe conditions."

  . . . Taken together, [these cases] stand . . . for the proposition that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and well-being.  The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - *e.g.*, food, clothing, shelter, medical care and ***reasonable safety*** - it transgresses the substantive limits on the state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney*, 489 U.S. at 198-200 (citations omitted) (emphasis added).

  Plaintiff contends that the sexual harassment and abuse to which she was subjected by Terrance Acey and John Ziegler, violated her Eighth Amendment right to physical safety and bodily integrity while in state custody. However, she seeks to hold supervisory officials James Caldwell and Jerrell Barbee liable for the acts of their subordinates,  Acey and Zeigler.  Because plaintiff does not allege that Caldwell and Barbee personally

17

participated in the deprivations, and rather, seeks to hold them liable in their supervisory capacity only, the court will follow the analysis set out by the Eleventh Circuit for determining whether a supervisor may be held liable for the unconstitutional acts of a subordinate under Section 1983.

A plaintiff may establish deliberate indifference on the part of a supervisor by showing: (1) that a history of widespread abuse put the reasonable supervisor on notice of the need to correct the alleged deprivation, and he failed to do so, *Cottone*, 326 F.3d at 1360; (2) that a custom or policy of the supervisor resulted in deliberate indifference to constitutional rights, *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)); (3) facts which support an inference that the supervisor knew that his subordinates would act unlawfully and failed to stop them from doing so, *Gonzalez*, 325 F.3d at 1235 (citing *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1561 (11th Cir. 1993) (finding no supervisory liability in the absence of such an inference)).  It is important to note, however, that "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate are extremely rigorous." *Gonzalez*, 325 F.3d at 1234 (quoting *Braddy v. Florida Dep't of Labor and Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

### 1.     *Jerrell Barbee.*

Barbee first contends that supervisory liability cannot be imposed upon him under any theory because neither Terrance Acey, nor John Zeigler were his subordinates.

(Barbee's Br. In Support, Doc. 110, at 12.)  He claims that "[he] did not supervise security guards, Youth Services Aides, and/or any other DYS employee who worked on the Chalkville Campus."  (*Id.* at ¶6.)  Barbee contends that his sole responsibility was administration of educational programs and that he only supervised Sequoia School personnel, including the faculty and the school secretary.  (Evidentiary Materials in Support of Defendant Barbee's Motion for Summary Judgment, Doc. 112, Ex. 2, Affidavit of Jerrell Barbee, at 2, ¶5.)  Barbee claims, that, other than misconduct by a teacher, all other staff misconduct on the Chalkville Campus would have been under the jurisdiction of Mr. Caldwell."  (Barbee Depo., Barbee Ex. 1, at 254.)

Plaintiff argues that, though Zeigler was a security guard employed by DYS, Barbee had actual supervisory authority over him when he was working in the School. Zeigler's testimony indicates that Barbee was, to some extent, his supervisor:

Q:    And Mr. Barbee had the authority to direct you to do something; am I correct on that?

A:    Yes.

(Zeigler Depo., Barbee Ex. 8, at 74.)

Barbee claims that his job was to educate the students, and that DYS alone was responsible for overseeing the security guards charged with protecting them.  (Barbee Depo., at 65-66, 251-52.)  However, plaintiff points to numerous documents which indicate that it was a crucial part of Barbee's job, as Principal, to insure the safety of his students.  For example, in a document entitled "Role Description," (Pl.'s Ex. 16), for the

position of Principal, the "performance responsibilities" listed include: "[i]nterprets and

enforces federal and state laws and state and local board policies," and "[p]rovides a *safe*

orderly environment that facilitates teaching and learning."  Alabama DYS School

District Policy Number 10.762 directs "all school personnel to discharge, in a reasonably

prudent manner, all responsibilities relative to the ***care, safety, and welfare*** of pupils

under their jurisdiction."  (Pl.'s Ex. 25.)

Considering that Barbee was responsible for the safety of the students in his

School, and Zeigler's testimony that Barbee had authority to direct his actions, a

reasonable jury could find that Barbee was Zeigler's supervisor.  Therefore, the court

must move on to the next step in the analysis and determine whether plaintiff has

established, through any of the three potential theories, that Barbee acted with deliberate

indifference to plaintiff's constitutional rights.

"The deprivations that constitute widespread abuse sufficient to notify the

supervising official must be obvious, flagrant, rampant and of continued duration, rather

than isolated occurrences."  *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 199)

(citing *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)).  Plaintiff has provided

evidence of allegations of sexual abuse by employees at the Chalkville campus through

complaint forms, letters, internal memoranda, and reports, which are dated as early as

1994 and continue through 1998, most of which are not relevant to plaintiff's claims

against Barbee.[5]  Although plaintiff may have established a history of widespread abuse on the Chalkville Campus, it is conceivable that, as principal of the Sequoia School, a "subunit" of the Chalkville Campus, Mr. Barbee had only a restricted view of the conditions occurring on the campus as a whole, and a limited sphere of influence. Plaintiff's evidence fails to connect Barbee to the majority of the complaints.  Few, if any, of the incidents described in the documents occurred on School grounds, and many of the alleged documents were generated before Barbee became Principal of the Sequoia School in July 1997.  Plaintiff has not produced evidence sufficient to establish a history of widespread abuse *at the Sequoia School* that would have put Barbee on notice of the need for corrective measures.

Plaintiff has also not offered evidence of any affirmative custom or policy implemented by Barbee which contributed to the deprivation of plaintiff's constitutional rights.  See *Cottone* 326 F.3d at 1362.  However, plaintiff contends that she has established that Barbee acted with deliberate indifference to her constitutional rights under the third theory of supervisory liability, by producing evidence which supports an inference that Barbee knew that Zeigler would act unconstitutionally, and failed to stop him from doing so.  *See*, *Gonsalez*, 325 F.3d at 1235.  The court agrees.

_____

[5] As was discussed  in the portion of this Opinion devoted to Barbee's Motion to Strike Portions of the Plaintiff's Evidence, the court has not considered Exhibits 13, 14, 29, 32-39, 44, 46-52 of Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Docs. 146-147, in opposition to Barbee's Motion for Summary Judgment.

In *Hartley v. Parnell*, the court suggests that prior inappropriate acts by an employee put his supervisor on notice that he might commit sexual abuse.  193 F.3d at 1269.  The plaintiff in *Hartley*, a student who was sexually abused by her teacher, sought to hold the superintendent of the school board liable for the teacher's actions on a theory of supervisory liability.  *Id*.  The court stated:

> Here, Parnell [the superintendent] did not personally participate in Godwin's sexual abuse of Hartley, and there is no evidence of any prior inappropriate acts by Godwin that should have put Parnell on notice that Godwin might commit such abuse.  Nor is there any evidence that Parnell, as superintendent, had any sort of policy in place prior to the sexual abuse which could have led Godwin to believe that sexual abuse of students was permitted by Parnell.  Accordingly, assuming Ms. Hartley has a substantive due process right not to be sexually abused by a teacher, Parnell did not deprive her of that right.

*Id.*

Although Barbee testified that he has no memory of plaintiff's complaints that she was being sexually harassed by Zielger, (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex. 7, at 14), plaintiff testified that he called her into his office to discuss her allegations.  (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex. 1, Muwwakkil Depo., at 211-12.)  Plaintiff claims that she "described in detail" to Barbee the things that Zeigler had been doing to her; that she told him "about the comments and the grabbing on me and touching me and wanting me to touch him."  (*Id*., at 282.)  Taking

the evidence in the light most favorable to the plaintiff, Barbee had subjective knowledge of the details of plaintiff's allegations against Zeigler and thus that, if plaintiff was telling the truth, plaintiff's constitutional rights were at risk of violation by Zeigler unless and until adequate corrective measures were taken.

Barbee argues that he believed that his response to plaintiff's allegations, taking away plaintiff's privilege of doing extra work around the school, was adequate because plaintiff made no further reports to him about Zeigler.  However, the circumstances surrounding Barbee's meeting with plaintiff, and remedial measures he took in response to her complaints, support an inference that Barbee acted with deliberate indifference.

Plaintiff testified that, when she told Barbee what Zeigler had been doing to her, he took Zeigler's side and yelled at her, telling her that he didn't believe her, and that "[she] was too smart to be such a liar."  (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex. 1, Muwwakkil Depo., at 212-13.)  The reaction plaintiff describes is an unreasonable response to a young girl's allegations that she has been sexually harassed and abused.  Barbee argues that he stopped allowing plaintiff to do extra work around the school as a remedial measure, in an attempt to limit her contact with Zeigler, but plaintiff perceived the loss of her clean-up privileges as punishment for complaining about Zeigler.  (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex. 1,

Muwwakkil Depo., at 284-285.)  Nevertheless, Barbee's alleged corrective action was in fact inadequate, as it did not stop Zeigler from harassing plaintiff.  (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex. 1, Muwwakkil Depo., at 290-91). Considering the facts and circumstances, a jury could infer that Barbee's response to plaintiff's allegations was not reasonably calculated to prevent future incidents of harassment by Zeigler, but rather to deter plaintiff from coming forward with such allegations in the future.

Barbee's response to plaintiff's allegations was also non-compliant with school board policy that he, as principal, was obligated to follow.  Pursuant to Policy Number 10.7.6.7.8, Barbee was under a duty to immediately report any suspected abuse to the Superintendent orally, and to follow the oral notice with a written report as soon as possible.  (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex. 28.)  There is no evidence that Barbee reported plaintiff's allegations to Caldwell, or that he documented her complaint in any way.  A jury could find that Barbee's inadequate response and failure to report the plaintiff's allegations contributed to the injury suffered by plaintiff by teaching Zeigler that he could violate plaintiff's rights without consequence, thereby encouraging him to continue to do so.

The court finds that the plaintiff has produced evidence from which a reasonable

24

jury could conclude that Barbee knew that Zeigler would act unlawfully and that he failed to stop him from doing so. *See, Gonsalez*, 325 F.3d at 1235. Therefore, there is a question of fact as to whether Barbee violated the plaintiff's constitutional rights by acting with deliberate indifference thereto.

## 2. *James Caldwell*

As the Superintendent of the Chalkville Campus from 1990 through 2001, James Caldwell was generally responsible for supervising, directing, and monitoring the day-to-day activities of subordinate employees, the implementation of safety and security procedures, the interviewing and recommending for hire of job applicants, all in accordance with Chalkville Campus, DYS, state and federal policies and procedures, and his personal judgment. (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex.12, Youth Services Institution Superintendent II, Task Statements.) Caldwell was also responsible for recommending personnel, legal and other actions. (*Id*.) Caldwell testified that, as Superintendent, he was ultimately responsible for the overall operation and management of staff and students, that he was obligated to ensure the safety of the students, to make sure they were not being abused in any way, and that it his duty to investigate all allegations against the staff of which he was made aware. (Plaintiff's Evidence Submitted in Opposition to Barbee's and Caldwell's Motions for Summary Judgment, Doc. 134, Ex. 4, Booker Depo., at 281, 332-34, 366-68, 426; *See also*, Doc.

147, Ex. 50.)  Caldwell was at the top of the chain of command at the Chalkville Campus;

he reported to the Administrator of Institutional Services, G. Wayne Booker, who, in turn,

reported to the Director of the Department of Youth Services.  (Plaintiff's Evidence

Submitted in Opposition to Barbee's and Caldwell's Motions for Summary Judgment,

Doc. 134, Ex. 4, Booker Depo., at 112.)

Plaintiff contends that she has established widespread abuse sufficient to put James

Caldwell on notice of the alleged constitutional violations.  "The deprivations that

constitute widespread abuse sufficient to notify the supervising official must be obvious,

flagrant, rampant and of continued duration, rather than isolated occurrences."  *Hartley v.*

*Parnell*, 193 F.3d 1263, 1269 (11th Cir. 199) (citing *Brown v. Crawford*, 906 F.2d 667,

671 (11th Cir. 1990)).  Plaintiff has provided evidence that defendant Caldwell had notice

of alleged sexual abuse by employees at the Chalkville campus through complaint forms,

letters, internal memoranda, and reports, which are dated as early as 1994 and continue

through 1998.  (Pl.'s Exs. 14, 29, 31-54.)  Many of these documents were generated by

Mr. Caldwell or received by him.  The documents refer to employees over whom Mr.

Caldwell had supervisory authority as Superintendent of Chalkville.  In fact, several

complaints included the names Terrance Acey and John Zielger, the employees accused

by plaintiff, before plaintiff was confined at Chalkville.

Mr. Caldwell argues that he "did not have any type of notice that any of the alleged

perpetrators would commit alleged sexual abuse."  (Caldwell's Br. In Support, Doc. 144

at 26.)  Viewing the evidence in the light most favorable to the plaintiff, as this Court is required to do at summary judgment, the court disagrees.  Plaintiff has presented sufficient evidence for a reasonable jury to conclude that there was a history of widespread abuse by employees on the Chalkville Campus, and that the abuse was sufficiently "obvious, flagrant, rampant, and of continued duration" to put Mr. Caldwell on notice thereof.  *Brown*, 906 F.2d at 671.

Plaintiff must also show that Mr. Caldwell failed to take action necessary to correct the widespread abuse, and that the failure constitutes deliberate indifference.  In late August 1998, plaintiff told a Chickasaw Cottage staffer that Acey had been sexually abusing her.  (Plaintiff's Evidence in Opposition to Barbee's and Caldwell's Motions for Summary Judgment, Doc. 134, Ex. 1, Muwwakkil Depo., at 185.)  Shortly thereafter, James Caldwell held a meeting with plaintiff and several other girls who had also reported sexual harassment and/or abuse by Chickasaw Cottage staff.  (*Id*., at 185-186.)[6]

During that meeting, plaintiff told Caldwell what Acey had been doing and saying to her.  (Plaintiff's Evidence in Opposition to Barbee's and Caldwell's Motions for Summary Judgment, Doc. 134, Ex. 1, Muwwakkil Depo., at 185-86.)  Ultimately, Caldwell told the girls that he did not believe them, and sent them back to their cottage.

---

[6]  DYS contends that this meeting occurred on October 26, 1998, just two days before the plaintiff was transferred to a new cottage.  However, plaintiff testified that the meeting was "shortly after" she complained about Acey to Chickasaw staff member Ms. Huffman in "late August 199[8]".  There is no record of the meeting.  As it is required to do on summary judgment, the court will take all facts in the light most favorable to the plaintiff, and will draw all inferences in her favor.

(*Id.*, at 188.)  There is no evidence that he took any action in response to the girls'
allegations.

According to plaintiff, after the meeting with Caldwell, Acey's inappropriate
behavior continued, though "it wasn't as bad as before."  (Plaintiff's Evidence Submitted
in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for
Summary Judgment, Doc. 146, Ex. 1, Muwwakkil Depo., at 189.)  Plaintiff claims that
Acey would still make sexually explicit comments like, "I want to fuck you in the ass and
I want you to suck my dick,"and that he would brush up against her unnecessarily.  (*Id.*)

Plaintiff wrote several letters to her mother in which she told her about the abuse
and, in October 1998, plaintiff's mother went to the Chalkville Campus and spoke with
Caldwell about the sexual abuse her daughter was experiencing.  (Plaintiff's Evidence
Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's
Motions for Summary Judgment, Doc. 146, Ex. 1, Muwwakkil Depo., at 189-90.)  Only
after her mother's visit at the end of October 1998, two months after plaintiff told
Caldwell about the harassment and abuse herself, did Caldwell take any action to protect
plaintiff from further harassment and abuse by Acey.  Caldwell's ultimate response,
transferring plaintiff from Chickasaw to Cherokee Cottage, was effective as Acey did not
have the opportunity to harass or abuse plaintiff after her transfer out of Chickasaw.  (*Id.*,
at 188, 191.)  Nevertheless, the court is of the opinion that Caldwell's initial response to
plaintiff's and the other girls' allegations constituted deliberate indifference.

28

Caldwell's form of a hearing, was to call Acey on speaker phone, in the girls' presence, to confront him about the allegations. (*Id*., at 186.) Plaintiff testified that Acey denied the allegations and that then, when Caldwell informed Acey that plaintiff was in the room listening, Acey began to talk directly to her. (*Id*., at 187.) Plaintiff claims that Acey told her she was lying, and that the discussion eventually escalated into a verbal altercation, to the extent that each was cursing at the other. (*Id*., at 187-88.) Initiating a telephone call by which Acey was allowed to verbally intimidate the plaintiff regarding her allegations was an objectively unreasonable response which, in itself, could support a finding of deliberate indifference. Furthermore, Caldwell has presented no evidence to show that he took any action in response to the girls' very serious allegations, or that he even investigated the matter. Nearly two months passed between the time of that meeting and the date when Caldwell first took action in response to plaintiff's complaints. During those two months, plaintiff had to endure continuing sexual harassment and abuse by Acey. Considering these facts in the light most favorable to the plaintiff, the court finds that there is sufficient evidence from which a jury could conclude that Caldwell acted with deliberate indifference to the violation of plaintiff's constitutional rights.

### C.    Clearly Established Right

Both Barbee and Caldwell had an affirmative duty to ensure that the plaintiff was free from sexual abuse and sexual harassment while she was incarcerated at Chalkville. The Supreme Court described this duty in *DeShaney* wherein the court held:

29

> The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.

489 U.S. at 200 (internal citations omitted).  The existence of an affirmative duty to protect children involuntarily confined by the state was later expressly recognized by the Eleventh Circuit in *Taylor*:

> The Second Circuit has held that government officials may be liable under Section 1983 not only for covert activity which is unlawful and harmful, but also for failure to act when the duty to act exists.  "When individuals are placed in custody or under the care of the government, their governmental custodians are sometimes charged with affirmative duties, the nonfeasance of which may violate the Constitution.  Thus, nonperformance of such custodial duties has been held to give rise to a Section 1983 cause of action for prisoners.  *Doe*, 649 F.2d at 141.
>
> . . .
>
> We agree with the Second Circuit:
>
>> Defendants may be held liable under 1983 if they, or in the case of an agency, its top supervisory personnel, exhibited deliberate indifference to a known injury, a known risk, or a specific duty and their failure to perform the duty or act to ameliorate the risk of injury was a proximate cause of plaintiff's deprivation of the rights under the Constitution.

818 F.2d at 797.

The duties were clearly established when the incidents which are the subject of this litigation occurred such that a reasonable person in the defendants' positions would have known that his actions could constitute violations of the plaintiff's constitutional rights.

Because the acts of Caldwell and Barbee which are the subject of this action were taken by each pursuant to his discretionary authority, and because there is sufficient evidence

30

from which a reasonable jury could conclude that Caldwell and Barbee each violated clearly established constitutional rights of which a reasonable person would have known, the court finds that neither is entitled to qualified immunity.  Because there is a question of material fact as to whether Caldwell and/or Barbee acted with deliberate indifference to plaintiff's constitutional rights, the Motions for Summary Judgment of defendants Caldwell and Barbee (docs. 109, 121), are due to be denied as to plaintiff's claims under Section 1983.

## III.   TITLE IX CLAIMS

Title IX provides, in pertinent part, that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . ."  20 U.S.C. §1681(a).  The Supreme Court has recognized an implied private right of action for money damages under Title IX in cases involving intentional sexual discrimination.  *Franklin v. Gwinett County Public School*, 503 U.S. 60, 65, 75 (1992).  The Supreme Court has also held that a teacher's sexual harassment of a student constitutes actionable discrimination for the purposes of Title IX.  *Id*., at 74-76; *see also*, *Davis v. Dakalb County School District*, 233 F.3d 1367, 1371 (11th Cir. 2000).

A Title IX plaintiff seeking to recover damages against a school district for teacher-on-student sexual harassment must establish two things to survive summary judgment:  (1) an "appropriate person," a school district official who, at a minimum, has the authority to institute corrective measures on the district's behalf, had actual notice of the harassment and

fails to adequately respond; and (2) the official's response amounts to deliberate indifference to the harassment.  *Sauls v. Pierce County School District*, 399 F.3d 1279, 1284 (11th Cir. 2005) (citing *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 290-93 (1998)).

Plaintiff contends that DYS is liable for violations of Title IX because it was aware of sexual abuse and harassment allegations against John Zeigler and Terrence Acey, and it was deliberately indifferent to the misconduct.  DYS argues that no DYS official with authority to take corrective measures on its behalf was on notice of the alleged harassment.

Plaintiff has submitted many reports, memoranda, and complaints involving allegations of sexual harassment and abuse of female students at Chalkville.  For example, a memorandum from James Caldwell to John Zeigler dated May 17, 1994 memorializes a meeting Caldwell held with Zeigler the day before regarding "accusations made against [him] by several female students."  (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 147, Ex. 31.)  Caldwell notes that, during the meeting, he made Zeigler aware that "this is not the first time that accusations of this nature have come up about [him]" and that Caldwell "had been told that [Zeigler] had a similar problem before transferring from Mt. Meigs." (*Id*.)  The memo does not specify what type of allegations had been made against Zeigler, however it is clear that some type of physical abuse was alleged.  (*Id*.)  The Chalkville Campus Report of Operations for July 1994 states that "[t]here has also been a problem with

female students alleging sexual misconduct being exhibited by male staff." (*Id.*, Ex. 33, unnumbered p. 3.)  An Incident Report dated August 18, 1995, describes a complaint received by Anita Tate from a student's mother.  (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 147, Ex. 37.)  Ms. Tate names several staff members, including Mr. Zeigler, who, according to the student's mother, were allegedly having "physical relationships" with students.  (*Id.*)  Ms. Tate notes that she informed Mr. Caldwell of the report.  (*Id.*)  On January 1, 1996 students Christi Gulsby and Shannon Kinnan, assisted by staff member Brenda Pool, completed a Complaint Form on which they stated:  "Mr. Acey has touched us and said inappropriate sexual things to us and watched us as we got dressed in our rooms or in the bathroom."  (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 147, Ex. 40.) The evidence shows that there was an investigation regarding the students' allegations against Acey, (*Id.*, Ex. 42), and that Caldwell scheduled an  administrative hearing for January 22, 1996, (*Id.*, Ex. 41), but there is no documentation regarding the result of the hearing, if any.

Of the many reports, memoranda, and complaints involving allegations of sexual abuse of female students at Chalkville, the court has singled out these particular documents, which were received or written by Mr. Caldwell.  Each of the documents mentioned above is dated prior to plaintiff's arrival at Chalkville, and each references an individual accused

by plaintiff of sexual abuse.  The court is of the opinion that, from the above evidence alone, a jury could conclude that Caldwell had actual notice of allegations of sexual abuse against Mr. Zeigler and Mr. Acey, prior to the alleged harassment and/or abuse of the plaintiff.

There is also evidence that both Caldwell and Barbee had actual knowledge of plaintiff's specific complaints against Zeigler and Acey.  According to the plaintiff's testimony, Caldwell received actual notice of her complaints against Acey in late August 1998 during a meeting with plaintiff and several other students making similar allegations against Acey.  (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex. 1, Muwwakkil Depo., at 185-88.)  Plaintiff testified that, nevertheless, Acey continued to harass her until she was transferred to a different cottage two months later, in October 1998.  (*Id*., at 189-191.)  Barbee received actual knowledge of plaintiff's allegations against John Zeigler during a meeting he held with the plaintiff in January 1999.  (Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex. 1, Muwwakkil Depo., at 211-12.)  Plaintiff testified that Zeigler's behavior did not change after she complained to Barbee.  (*Id*., at 290-291.)  This evidence is sufficient, at summary judgment, to show that Caldwell and Barbee had actual notice of allegations of sexual harassment and abuse against DYS employees Acey and Zeigler.

The next step in the analysis is a determination of whether Caldwell and/or Barbee are "appropriate persons" under Title IX.  An "'appropriate person' under Section 1682 is, at

minimum, an official of the recipient entity with authority to take corrective action to end the

discrimination." *Gebser*, 524 U.S. at 290.  DYS argues that "corrective actions sufficient to

remedy Title IX violations would be either to suspend or terminate any employee for his or

her misconduct."  (DYS's Br. in Support of Summary Judgment, Doc. 113, at 18.)

Therefore, DYS contends, neither Caldwell nor Barbee is an "appropriate person" as a matter

of law under Title IX because neither has the authority to suspend or terminate subordinate

employees.  (DYS's Br. in Support of Summary Judgment, Doc. 113, at 20).  Unfortunately,

the appellate courts have given little guidance on this issue; however, neither the Supreme Court nor

the Eleventh Circuit has so narrowly defined "corrective measures."[7]  In certain circumstances, it

seems that remedial actions other than suspension or termination may be sufficient.

Plaintiff has provided evidence that, as Superintendent of the Chalkville Campus, James

Caldwell had broad authority and responsibility to supervise all areas of the campus so as to assure

the protection of the students, to investigate and eradicate the sexual abuse and harassment of all

students on the Chalkville Campus, and to impose discipline on all staff, including, notably,

suspending employees pending termination proceedings.  (Pl.'s Ex. 2, Caldwell Depo., at 197-200.)

This is sufficient evidence from which a reasonable jury could conclude that Caldwell was a DYS

official with authority to take corrective action to end the harassment and abuse by Terrence Acey

and John Zeigler.

Plaintiff contends that Jerell Barbee, Principal of the Sequoyah School, also qualifies as an

---

[7]  The Eleventh Circuit has "left for another day the task of delineating *Gebser's*
'appropriate person.'"  *Davis v. Dekalb County Sch. Dist.*, 233 F.3d 1367, 1372 n.6 (11th Cir.
2000).

"appropriate person" under Title IX.  (Pl.'s Br. in Opposition to Summary Judgment, Doc. 148, at

22-23.)  Despite the fact that the neither the Eleventh Circuit nor Supreme Court has  addressed the

"appropriate person" issue head on, it appears that a school principal may qualify.  In *Davis v.*

*Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme Court reversed the dismissal

of a Title IX lawsuit involving student-on-student sexual harassment where the only "school official"

with knowledge of the harassment was the principal.  In *Gebser*, the Court determined that the

information received was insufficient to give the principal actual notice that a teacher was having

a sexual relationship with a student.  524 U.S. at 291.  In addition, the Third and Tenth Circuit

Courts of Appeal have held that a principal may be an "appropriate person" under Title IX.  See,

*Warren v. Reading Sch. Dist.*, 278 F.3d 163 (3d Cir. 2002) ("a school principal who is entrusted with

the responsibility and authority normally associated with that position will ordinarily be an

'appropriate person' under Title IX"); (*Murrell v. School District No. 1, Denver, CO*, 186 F.3d 1238

(10th Cir. 1999) (school principal is appropriate person).

It is clear from DYS documents that, as principal, Barbee's responsibilities included

providing a safe, orderly environment for the students, interpreting and enforcing federal and state

laws, and state and local board policies.  (Plaintiff's Evidence Submitted in Opposition to The

Department of Youth Services and Jerrell Barbee's Motions for Summary Judgment, Doc. 146, Ex.

15, Role Description – Principal.)  There is also evidence that Barbee actually took certain corrective

measures after learning of plaintiff's complaints against Zeigler.  Many of the incidents plaintiff

reported had occurred after school hours while she was helping out around the school grounds.

(Plaintiff's Evidence Submitted in Opposition to The Department of Youth Services and Jerrell

Barbee's Motions for Summary Judgment, Doc. 146, Ex. 1, Muwwakkil Depo., at 202-206.)  After

plaintiff's meeting with Barbee, he made sure that she was no longer allowed to stay after school to do extra chores. (*Id.*, at 284-85.) The court finds that there is a question of fact as to whether Barbee was an appropriate person under Title IX with the authority to take corrective measures in response to plaintiff's allegations of sexual abuse.

In order to prevail on its Title IX claims however, plaintiff must establish that after receiving actual notice of sexual harassment and/or abuse of students, the official responded with deliberate indifference. *Sauls*, 399 F.3d at 1284. Recognizing that school administrators need to retain considerable flexibility in handling disciplinary issues, the Supreme Court has held that a school district can be liable under Title IX only if its "response to the harassment or lack thereof is clearly unreasonable in light of known circumstances." *Davis v. Monroe County Board of Education*, 526 U.S. at 648. DYS contends that Caldwell's actions in response to plaintiff's allegations of abuse by Acey were sufficient to shield DYS from liability under Title IX. (DYS's Reply Br. in Support of Summary Judgment, Doc. 152, at 9.) The court disagrees. As previously discussed at length with regard to plaintiff's Section 1983 claims, the court is of the opinion that there is sufficient evidence from which a reasonable jury could find that both Caldwell and Barbee acted with deliberate indifference in response to plaintiff's allegations. Therefore, DYS has failed to meet its burden at summary judgment as it has not established that "appropriate persons" did not have actual knowledge of Acey's and Zeigler's misconduct, or that, if they did, they did not act with deliberate indifference. DYS's Motion for Summary Judgment on plaintiff's Title IX claims, (doc. 111), is due to be denied.

## IV.    STATE LAW CLAIMS

37

In Count Six of her Second Amended Complaint, plaintiff brings claims against defendants Barbee and Caldwell for negligent and/or wanton, and malicious hiring, training, supervision and retention.  (Second Amended Compl., Doc 61, at 12, ¶ 68.)

As the Eleventh Circuit held in *Ott v. City of Mobile*, 169 F.Supp.2d 1301, 1315 (11th Cir. 2001), Alabama law does not recognize a cause of action against a supervisory employee for the negligent training or supervision of a subordinate.   The court explained:

> Alabama law is clear that the tort of negligent supervision or training requires as an element the existence of a master-servant relationship.  We are mindful of the fact that this Court recognizes a cause of action *against the master* based upon the incompetence of the servant.  A supervisor is not the master of the subordinate, nor is the subordinate the servant of the supervisor; rather, as Alabama cases make plain, the status of 'master' is restricted to one who is actually or essentially the employer of the servant. . . .   Accordingly, because Alabama law recognizes no cause of action against a supervisor for negligent failure to supervise or train a subordinate, Count Four is due to be dismissed.

*Id*. at 1315.

Plaintiff's claims against Barbee and Caldwell for negligent and/or wanton and malicious hiring, training, supervision and retention fails as a matter of law.  Therefore, Count Six of the plaintiff's Second Amended and Restated Complaint is due to be dismissed.

**V.     CONCLUSION**

Based on the foregoing, the Court finds that Barbee's Motion to Strike, (doc. 133), is due to be denied; DYS's Motion for Summary Judgment, (doc. 111), is due to be denied; Barbee's Motion for Summary Judgment, (doc. 109), is due to be granted as to plaintiff's state law claims and denied as to plaintiff's claims under Section 1983; and Caldwell's Motion for Summary Judgment, (doc. 121), is due to be granted as to plaintiff's state law

claims and denied as to plaintiff's Section 1983 claims. In accordance with this Memorandum Opinion, an Order will be entered contemporaneously herewith.

**DONE** this the 29th day of September, 2006.

*Sharon Lovelace Blackburn*

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE

39